SOUTHERN DISTRICT OF MISSISSIPPI
FILED
APR 20 2011
J. T. NOBLIN, CLERK
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

M.T., by and through his next friend, )
Marcus Powell; R.R., by and through his )
next friend, Melissa Hall; on behalf of )
themselves and all persons similarly )
situated, )
)
      Plaintiffs, )
) Case No. 2:11cv 91 KS-MTP
v. )
) **JURY TRIAL REQUESTED**
FORREST COUNTY, MISSISSIPPI, )
)
      Defendant. )
)

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1.  This is a civil action pursuant to 42 U.S.C. § 1983 to vindicate the rights of children imprisoned in the Forrest County Juvenile Detention Center ("Juvenile Detention Center") under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution. The Plaintiffs represent a class of children who have suffered physical and mental abuse and live in unsafe and unsanitary conditions at the Juvenile Detention Center. The inhumane and unconstitutional conditions include dangerously deficient security procedures that put youth at extreme risk of serious bodily harm, staff who regularly physically abuse the children in their care, and the denial of medical, mental health and rehabilitative services. Juvenile Detention Center staff also grossly overuse mechanical restraints, including routinely shackling youth while they are at school and leaving youth shackled and/or handcuffed unsupervised in cells for extended periods of time.

2. On behalf of themselves and all similarly situated children, the named Plaintiffs seek declaratory, preliminary and permanent injunctive relief requiring that the Defendant cease its unconstitutional policies and practices at the Juvenile Detention Center and to provide class members with constitutionally required care and living conditions.

## PARTIES

3. M.T. is a fifteen-year-old boy with Attention Deficit Hyperactivity Disorder who is currently imprisoned in the Juvenile Detention Center. On behalf of himself and all similarly situated children, he brings this action by and through his next friend and father, Marcus Powell. He has not been adjudicated delinquent by the youth court, and is detained while he awaits his court date. For the past ten days, M.T. has been forced to live in unsanitary and unsafe conditions, and has been subjected to physical abuse and excessive use of restraints presently and in the past.

4. R.R. is a fifteen-year-old boy who has been diagnosed with multiple mental health disorders, including Attention Deficit Hyperactivity Disorder, Oppositional Defiant Disorder and Paranoid Schizophrenia, has a history of receiving treatment for mental illness and who is currently imprisoned in the Juvenile Detention Center. On behalf of himself and all similarly situated children, he brings this action by and through his next friend and mother, Melissa Hall. He has not been adjudicated delinquent by the youth court, and is detained while he awaits his court date. For the past six days, R.R. has been forced to live in unsanitary and unsafe conditions, subjected to physical abuse and excessive use of restraints, and excessive cell confinement, denied medical treatment and rehabilitative treatment presently and in the past.

5. The named Plaintiffs' plight echoes the stories of many youth interviewed by attorneys. All of these children uniformly describe the Juvenile Detention Center as a squalid facility, where jail officials frequently resort to the abusive, arbitrary use of mechanical restraints and excessive physical force. These conditions violate the constitutional rights of the named Plaintiffs and all similarly situated children, all of whom are entitled to reasonably safe and sanitary conditions of confinement, freedom from unreasonable bodily restraint, and protection from harm.

6. Defendant Forrest County is the governmental entity with responsibility to "establish and maintain detention facilities, shelter facilities,…or any other facility necessary to carry on the work of the youth court." Miss. Code Ann. § 43-21-109. Pursuant to Miss Code Ann. § 17-13-7, Forrest County is authorized to detain and house youth from Hancock, Green, Stone, Lamar, Pearl River, Covington, George, Newton, and Scott counties. While other counties may be responsible for the cost of detention, Forrest County is the entity with ultimate responsibility to secure and protect the rights of children held in the Juvenile Detention Center.

7. The Defendant ignores well-established law and acts with deliberate indifference by subjecting the named Plaintiffs and all similarly situated children to shockingly inhumane conditions of confinement, physical abuse, and excessive use of mechanical restraints.

**JURISDICTION AND VENUE**

8. The named Plaintiffs' cause of action arises under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

9. Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1331.

10. Venue in this Court is proper under 28 U.S.C. § 1391(b). Defendant resides in this district, and the events and omissions complained of occurred in this district.

## CLASS ACTION ALLEGATIONS

11. The named Plaintiffs bring this suit on their own behalf and on behalf of all children who are, or will in the future be, incarcerated at the Forrest County Juvenile Detention Center.

12. The class is so numerous that joinder of all members is impractical. The Juvenile Detention Center has the capacity to house 46 youth at one time and well over 100 youth pass through the facility in a one-year time period. The Defendant has subjected literally hundreds of children to abusive conditions in the Forrest County Juvenile Detention Center. Children remain in the Juvenile Detention Center for varying lengths of time, and the population changes on a daily basis. The class also includes future members whose names are not known. Fed. R. Civ. P. 23(a)(1).

13. There are questions of law and fact common to all class members, including but not limited to the Defendant's failure to protect class members from harm, the Defendant's failure to provide class members with constitutionally safe and humane conditions of confinement and the Defendant's failure to ensure class members' meaningful, effective and adequate access to the courts. Fed. R. Civ. P. 23(a)(3).

14. Because the policies, practices, and customs challenged in this Complaint apply with equal force to the named Plaintiffs and the other members of the class, the claims of the named Plaintiffs are typical of the class in general. Fed. R. Civ. P. 23(a)(3).

15. The named Plaintiffs will fairly and adequately represent the interests of the class. They possess a strong personal interest in the subject matter of the lawsuit and are represented by

experienced counsel with expertise in class action litigation in federal court. Counsel has the legal knowledge and resources to fairly and adequately represent the interests of all class members in this action. Fed. R. Civ. P. 23(a)(4).

16. The Defendant has acted and refuses to act on grounds generally applicable to the class in that Defendant's policies and practices of violating the Plaintiffs' constitutional rights has affected all class members. Accordingly, final injunctive and declaratory relief is appropriate to the class as a whole. Fed. R. Civ. P. 23(b)(2).

## STATEMENT OF FACTS

17. The Forrest County Juvenile Detention Center is a 46-bed facility that holds children awaiting adjudication and disposition by the Forrest County Youth Court as well as youth awaiting adjudication and disposition by the Hancock, Green, George, Stone, Lamar, Pearl River, Covington, Newton, and Scott County Youth Courts. It may also house youth for up to 90 days as a post-adjudication disposition. Miss. Code Ann. § 43-21-605(1)(k). Youth are regularly incarcerated at the Juvenile Detention Center both before and after disposition.

### Physical Abuse by Staff and Excessive Use of Mechanical Restraints

18. Defendant has a custom and/or practice of acting with deliberate indifference to the constitutional rights of youth in its custody which manifest in unconscionable abuses including the excessive use of mechanical restraints and physical abuse by staff.

19. Defendant regularly and routinely requires all youth to wear leg irons in order to attend the on-site school. Youth are forced to walk up and down stairs while wearing shackles and youth remain in shackles during all classroom instruction. The Defendants' failure to ensure that

staff are trained in the appropriate and constitutional use of restraints manifests itself in egregious abuses.

20. Defendant has a custom and/or practice of leaving children unsupervised in cells while wearing physical restraints. Defendant requires children to wear leg irons and/or handcuffs when appearing before the Forrest County Youth Court, which is located within the same building as the detention center. Youth are frequently placed in restraints and are left alone in isolation cells to wait to be taken before a judge. Plaintiff R.R. was told that he would be going before the Youth Court on April 19, 2011. Defendants placed R.R. in leg irons and left him alone in an isolation cell for an extended period of time, before he was eventually returned to the general population without being taken to court.

21. During June 2010, Plaintiff M.T. was physically assaulted by guards before being handcuffed and shackled to a wooden chair and left alone in his cell for hours. Guards handcuffed M.T.'s hands around the back of the chair and M.T.'s legs were shackled to the chair. After he was handcuffed and shackled, the guards left M.T. alone in the cell. The window of the cell was covered by paper and M.T. had no ability to contact staff. M.T. fell backwards in the chair, and he remained on the floor for five to fifteen minutes before guards reentered his cell and picked him up. The guards threatened him by saying if he fell over again they would leave him on the floor until the next morning. M.T. remained alone in his cell, handcuffed and shackled for another one and half to two hours, before the restraints were removed. The restraints left indentations and marks on his wrists and ankles, and M.T. did not receive any medical exam following this extensive restraint. There was absolutely no security or other penological or rehabilitative justification for this application of mechanical restraints.

22. Last month, Plaintiff R.R. was subjected to verbal and physical abuse by detention center staff. A guard referred to R.R. using profanity and then slammed him onto the floor on his back. R.R. was punched in the face by the guard, causing his mouth to bleed. R.R. was placed in handcuffs and was left alone in an isolation room, where he remained handcuffed. R.R. never received any medical attention for his injuries.

### Dangerous, Unsanitary and Deficient Conditions

23. The Defendant has a custom and/or practice of failing to provide sanitary facilities for the children in its care. Staff do not clean the living facilities regularly. In each of the boys' dormitories, there is a corner that is generally filled with spit, blood, trash, and dirt, creating a substantial and overpowering odor. Dust and dirt commonly covers the living areas. The walls and beds are often stained with mold. The children, including the Plaintiffs, have to sleep using small, torn sheets, which are not washed regularly.

24. The Defendant has a custom and/or practice of failing to provide for the appropriate hygiene for the children in its custody. Youth are arbitrarily denied showers for a variety of reasons. Children are held in isolation for days after intake and are not allowed to shower until they are placed on the unit. Plaintiff R.R. was denied a hot shower by a guard who stated that he did not have time to take R.R. to another cell to shower, after there was an issue getting hot water in R.R.'s cell. Defendant does not provide youth with adequate personal hygiene items. Youth, including the Plaintiffs, are not provided soap to wash their hands after they use the toilet or shampoo to wash their hair, and they are only allowed to brush their teeth once a day.

25. The Defendant has a custom and/or practice of failing to provide adequate clothing for children in its custody. Defendant does not provide youth with underwear, bras or socks, and youth must wear the same underwear and socks throughout the duration of their confinement,

unless their parents bring them additional pairs. Because the facility holds youth from several different counties, parents must often travel a substantial distance to the facility, which is frequently a hardship or impossible. Girls are not allowed to wear bras, unless they brought a sports bra with them. Sometimes youth, including the Plaintiffs, must remain in the same dirty underwear for days at a time. When guards do take their underwear to be washed at night after the evening shower time, the Plaintiffs and other youth are not given another pair of underwear and must remain without underwear until their original pair is returned, which could be days. Children are sometimes given the choice as to whether to go without any underwear at all for this time in order to have their only pair washed or to remain in dirty underwear.

### Excessive Arbitrary and Punitive Cell Confinement

26. Defendant has a custom and/or practice of routinely confining children after intake for alone in oppressively small cells that contain nothing but a toilet, sink and cement bed. Children are not allowed to leave these cells at all for 24 to 48 hours or more after they arrive at the facility, until they are allowed to move to the general population, and are not allowed access to education, recreation or rehabilitative programming of any kind. Youth only have a sleeping mat and thin blankets with them in these cells. Youth are denied any type of reading or writing materials in their cells, and are required to simply sit and stare at the blank white walls for days without interruption.

27. Defendant has a custom and/or practice of subjecting children to arbitrary, overly punitive long-term cell confinement as punishment for minor misbehavior or for behavior that is not prohibited. Youth, including the Plaintiffs, are frequently placed on "lock-down" as punishment for a wide variety of infractions, such as singing, talking back or having an extra

blanket in their cell. Staff do not inform youth of the facility's rules upon intake, and as a result, children often unknowingly violate rules, resulting a prolonged lock-down. Staff sometimes gives all youth on a living unit lock-down when only one resident disobeys a rule, even when all of the other youth fully comply with all directives. Youth are regularly placed on lock-down for prolonged periods of time. Plaintiff R.R. has been given lock-down for one to two weeks. During the time that a child is on lock-down, the guards generally do not allow the child to come out of their small cell for any reason; the youth is not given any educational, recreational or rehabilitative services or material during that time.

### Arbitrary and Intrusive Strip Searches

28. The Defendant has a custom and/or practice of arbitrarily subjecting youth to intrusive and excessive strip searches. Each guard has his or her own practice regarding how to search youth who are entering the facility. The type of search that a child is subjected to – and the level of intrusiveness of that search – is based not on any assessment of security needs or of the reasonableness of the search, but is instead based on the preferences of individual staff members. Plaintiffs M.T. and R.R. were both subjected to a highly intrusive strip search, in which a guard required them to completely remove all of their clothing, squat and cough, an extremely degrading and demeaning experience. Other youth who were booked into the facility by different guards were not required to remove any clothing or were permitted to keep on their underwear.

### Inadequate Exercise and Programming

29. Defendant has a custom and/or policy of failing to provide children with access to regular physical exercise, recreation or any other rehabilitative programming. Youth are sometimes permitted to exercise for thirty to sixty minutes, but generally youth are denied the opportunity to

engage in any large muscle exercise for days or weeks at a time. Female youth are given even fewer opportunities for recreation than male youth. Youth who attempt to engage in large muscle exercise inside the dorm, including push-ups or running, are subjected to discipline.

### Inadequate Training and Supervision of Staff

30. The Defendant has a custom and/or practice of failing to ensure the proper training and supervision of Juvenile Detention Center staff. Consequently, the safety and security of youth at the Juvenile Detention Center is constantly threatened by the extreme incompetence of staff and the lack of adequate supervision and oversight. During the day, youth, including the Plaintiffs, are left alone in the dayroom for long periods of time with little or no staff oversight and are frequently unable to get the attention of guards when necessary. Children who are placed on cell confinement as a punishment are given no supervision or assistance and frequently have to resort to yelling or kicking the door to get the attention of staff when needed, behavior that results in disciplinary consequences. Staff frequently resort to physical violence and respond to youths' requests for help or assistance with profanity and indifference.

### Inadequate Family Unification and Community Reintegration

31. The Defendant has a custom and/or practice that places unreasonable and unnecessary burdens on youth and their ability to maintain contact with their families. This communication is essential for children's treatment and rehabilitation and for their eventual reintegration into the community, and the Defendant fails to ensure that the facility's policies and practices do not substantially depart from accepted professional judgment.

32.     Youth's access to the telephone to communicate with their family is unreasonably restricted. Children, including the Plaintiffs, are not allowed to regularly call their family members when they are admitted to the Juvenile Detention Center or while they were held in custody. Access to the telephone is especially important for children whose families are unable to visit during in-person visitation hours due to work or other conflicts. Due to the number of counties that send youth to the Juvenile Detention Center, phone contact is vitally essential to maintaining family contacts because the distance some youth are from their respective homes makes in-person visitation impracticable for many families. This practice also violates state law. *See* Miss. Code Ann. § 43-21-311(2).

33.     The Defendant's in-person visitation hours are held at times when many parents or guardians are working and are therefore unable to visit their children. Visitation is only held during normal business hours on weekdays, a time that most parents or guardians are working. Defendant's visitation hours fail to take into consideration the great distances many parents and guardians must travel to visit their children at the Juvenile Detention Center, which may prevent many parents from being able to visit their children in person.

## Inadequate Medical Treatment

34.     Defendant has a custom and/or practice of being deliberately indifferent to the serious medical needs of the youth confined at the Juvenile Detention Center.

35.     The Defendant fails to provide constitutionally adequate medical services for the children in its custody. The Defendant has a policy and practice of denying or delaying youth's access to medical services despite their requests or visible need for medical care. Plaintiffs R.R. and M.T. were both not given any medical attention after being subjected to the use of force and restraints,

despite having visible injuries from these events. Juvenile Detention staff instruct the parents of detained youth to bring bandages, medications and other basic medical supplies to the Juvenile Detention Center. If parents cannot provide these supplies, youth frequently go without necessary medical care.

36. Non-medical staff—specially the guards—control youths' access to medical care. Children are required to disclose confidential medical information to the guards and to ask a guard to complete a sick call form for them, which the guards frequently refuse to do. In December of 2010, Plaintiff R.R. fell ill with chills and a sore throat while at the facility and was so sick that he could not leave his cell except for meals for more than a week. Even though he told the guards every day that he was ill and asked to see the nurse repeatedly, he was never given a sick call form. Guards told him that they would fill out the form but R.R. never saw the form and was not allowed to see the nurse.

37. Upon information and belief, and based on interviews with other youth who are held or were recently held in the Juvenile Detention Center, other putative class members are regularly denied adequate medical care.

### Inadequate Mental Health and Rehabilitative Treatment

38. Defendant has a custom and/or practice of being deliberately indifferent to the serious mental health and rehabilitative needs of the youth confined at the Juvenile Detention Center.

39. The Defendant fails to provide minimally adequate mental health services for the children in its custody. The Defendant has a policy and practice of denying the Plaintiffs access to regular mental health counseling and to needed medication. Plaintiff R.R. lives with serious mental health needs, has been diagnosed with ADHD, ODD, and other mental health conditions,

including paranoid schizophrenia, and received treatment for these mental health needs prior to their detention. Given R.R.'s past history of mental health treatment, he requires regular mental health counseling, assessment and evaluation. R.R. has also been denied access to prescription medication needed to modify his behavior, even after his mother has brought the medication to the facility. The Defendant denies R.R. access to any of these components of mental health treatment.

40. Defendant fails to assure adequate psychological assessments of children upon admission to the Juvenile Detention Center, resulting in under-identification of and inadequate treatment for children with serious mental illnesses, developmental disabilities or other disabilities.

41. None of the named Plaintiffs received the rehabilitative treatment to which they are entitled under federal law. The Defendant fails to provide the Plaintiffs with any sort of programming, services, or interventions that could be reasonably related to their treatment or rehabilitation. Youth are not given adequate individualized counseling services to assess and meet their rehabilitative goals and needs. Youth do not receive adequate transitional services to assist their reintegration into the community and to help reduce potential recidivism.

42. Youth imprisoned in the Juvenile Detention Center spend the majority of their time in the dayroom. Recreation is inadequate and often nonexistent. There are no structured activities for youth to participate in, nor are youth provided with any reading or writing materials. Youth are forced to sit idle for extended periods of time. Youth confined in this manner suffer deteriorating physical and mental health.

43. Upon information and belief, and based on interviews with youth who were recently held in the Juvenile Detention Center, other putative class members are regularly denied adequate mental health care and rehabilitative services.

## NECESSITY FOR INJUNCTIVE RELIEF

44. The Defendant has acted and continues to act in violation of the law as explained above. The Plaintiffs and the class they seek to represent do not have an adequate remedy at law. As a result of the policies, practices, acts and omissions of the Defendant, the Plaintiffs, and the class they seek to represent, have suffered serious, imminent, irreparable physical, mental and emotional injuries.

## EXHAUSTION

45. The Plaintiffs have exhausted all available administrative remedies.

## CAUSES OF ACTION

46. Plaintiffs incorporates by reference all of the above factual allegations to support the following claims:

### Count I

47. The conditions of confinement at the Juvenile Detention Center and the Defendant's deliberate indifference to those conditions, considered both individually and in their totality, constitute cruel and unusual punishment and a denial of due process in violation of Plaintiffs' rights under the Eighth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count II

48. Defendant's refusal to protect children from harm, otherwise keep them physically safe and secure and free from unconstitutional practices like excessive room confinement, arbitrary

and punitive disciplinary practices and excessive use of restraints violates Plaintiffs' constitutional rights under the Eighth Amendment and the Fourteenth Amendment to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count III

49. Defendant's deliberate indifference to the children's serious mental health needs and their right to rehabilitative services violates the Plaintiffs' constitutional rights under the Eighth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### Count IV

50. Defendant's policy and practice of subjecting youth to arbitrary and excessive strip searches violates the Plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution, as enforced through 42 U.S.C. § 1983.

### PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Honorable Court grant the following relief:

a. Declare that the acts and omissions of the Defendant violate the federal law;

b. Enter a preliminary and permanent injunction requiring the Defendant, its agents, employees and all persons acting in concert with the Defendant to cease their unconstitutional and unlawful practices;

c. Award to the Plaintiff reasonable costs and attorney's fees; and

d. Grant the Plaintiff such other relief as the Court deems just.

Respectfully submitted,

/s/ Jody E. Owens II
Jody E. Owens, II, Miss Bar No. 102333
Poonam Juneja, Miss. Bar No. 103181
Corrie Cockrell, Miss Bar No. 102376

Sheila A. Bedi, Miss. Bar No. 101652
Mississippi Youth Justice Project
A Project of the Southern Poverty Law Center
921 N. President St., Suite B
Jackson, Mississippi 39202
jody.owens@splcenter.org
poonam.juneja@splcenter.org
corrie.cockrell@splcenter.org
sheila.bedi@splcenter.org
601-948-8882 (telephone)
601-948-8885 (fax)

Counsel for Plaintiffs.